# United States Court of Appeals for the Federal Circuit

---

**ARCTIC CAT INC.,**
*Plaintiff-Appellant*

**v.**

**BOMBARDIER RECREATIONAL PRODUCTS INC.,
BRP U.S. INC.,**
*Defendants-Appellees*

---

2019-1080

---

Appeal from the United States District Court for the Southern District of Florida in No. 0:14-cv-62369-BB, Judge Beth Bloom.

---

Decided: February 19, 2020

---

GREGG LOCASCIO, Kirkland & Ellis LLP, Washington, DC, argued for plaintiff-appellant. Also represented by NATHAN S. MAMMEN, JOHN C. O'QUINN, CALVIN ALEXANDER SHANK; NICHOLAS STEPHAN BOEBEL, Hansen Reynolds LLC, Minneapolis, MN; NIALL ANDREW MACLEOD, AARON MYERS, DIANE PETERSON, Kutak Rock LLP, Minneapolis, MN.

LOUIS W. TOMPROS, Wilmer Cutler Pickering Hale and Dorr LLP, Boston, MA, argued for defendants-appellees.

Also represented by JENNIFER JASMINE JOHN, MICHELLE LISZT SANDALS.

————————————

Before LOURIE, MOORE, and STOLL, *Circuit Judges.*

LOURIE, *Circuit Judge.*

Arctic Cat Inc. ("Arctic Cat") appeals from a judgment of the United States District Court for the Southern District of Florida that Arctic Cat is not entitled to recover pre-complaint damages from Bombardier Recreational Products Inc. ("Bombardier") due to the failure of Arctic Cat's licensee to mark products in accordance with 35 U.S.C. § 287. *Arctic Cat Inc. v. Bombardier Recreational Prods.*, 334 F. Supp. 3d 1238, 1240 (S.D. Fla. 2018). Because we agree with the district court that § 287 continues to limit damages after a patentee or licensee ceases sales of unmarked products, and that willful infringement does not establish actual notice under § 287, we affirm.

## BACKGROUND

Arctic Cat owns U.S. Patents 6,793,545 ("the '545 patent") and 6,568,969 ("the '969 patent"), which are directed to thrust steering systems for personal watercraft ("PWCs"). The '545 and '969 patents issued in 2004 and 2003 respectively, but Arctic Cat had stopped selling PWCs before either patent issued. In 2002, Arctic Cat entered into a license agreement with Honda for several Arctic Cat patents and patent applications, as well as any later patents "that patentably cover Arctic Cat's Controlled Thrust Steering methods, systems, and developments," which includes the '545 and '969 patents. J.A. 256 ¶ GG; *see* J.A. 4078. The initial draft of the license agreement included a provision requiring Honda, as licensee, to mark all licensed products with the applicable patent numbers. However, that provision was deleted during negotiations, and the final version of the license agreement expressly stated that Honda had no marking obligations.

Thereafter, Honda began making and selling unmarked PWCs, and Arctic Cat made no effort to ensure that PWCs sold by Honda were marked. The parties dispute when Honda stopped selling unmarked products under its license with Arctic Cat, but Arctic Cat asserts that Honda stopped selling unmarked products no later than September 6, 2013, approximately one year before Arctic Cat sued Bombardier. Bombardier contends that Honda continued to sell PWCs under the Arctic Cat license as late as 2018.

On October 16, 2014, Arctic Cat sued Bombardier for infringement of various claims of the '545 and '969 patents. Before trial, Bombardier moved to limit Arctic Cat's potential damages because of Honda's sales of unmarked products. The district court held that Bombardier, as defendant, bore the burden of proving that Honda's PWCs practiced the asserted claims and, because that proof was lacking, denied Bombardier's motion.

At trial, the jury found Arctic Cat's patents not invalid, awarded Arctic Cat a royalty to begin on October 16, 2008—six years before Arctic Cat filed suit—and found that Bombardier had willfully infringed the asserted claims. After post-trial briefing, as relevant here, the district court denied Bombardier's renewed motion for judgment as a matter of law on marking and willfulness. As to marking, the district court held that Bombardier had failed to meet its burden of proving that Honda's PWCs practiced the asserted claims. Bombardier appealed to this court. *See Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350 (Fed. Cir. 2017) ("*Arctic Cat I*").

On appeal, we affirmed as to willfulness but vacated and remanded as to marking. *Id.* at 1369. Specifically, we determined that the district court erred in placing the burden on Bombardier to prove that the Honda PWCs practiced the claimed invention. We held that once an alleged infringer identifies products that it believes are unmarked

patented articles subject to the notice requirements of § 287, the patentee bears the burden of proving that the identified products do not practice the claimed invention. *Id.* at 1368. Accordingly, we vacated the district court's judgment as to marking and remanded to allow Arctic Cat an opportunity to establish that the Honda PWCs do not fall within the asserted claims.

On remand, Arctic Cat conceded that it could not show that the Honda PWCs do not practice the asserted claims, J.A. 5065 ¶ K; J.A. 589, but nonetheless moved for summary judgment that it is entitled to receive pre-complaint damages. First, Arctic Cat argued that the damages limitation of 35 U.S.C. § 287 applies only while a patentee is actively making, using, or selling unmarked products. Thus, Arctic Cat argued, § 287 did not apply after the time that it alleges Honda stopped selling unmarked products, and Arctic Cat is therefore entitled to damages during the period after the cessation of Honda's sales but before the filing of its suit against Bombardier. More ambitiously, Arctic Cat also argued that it is entitled to damages for the full six-year period prior to suit allowed under 35 U.S.C. § 286—including for the period during which Honda was undisputedly selling unmarked products—because the jury's finding of willful infringement is sufficient to demonstrate actual notice under § 287.

In its own motion for summary judgment, Bombardier argued that Honda's PWCs were unmarked patented articles and Arctic Cat failed to provide constructive or actual notice under § 287, and Arctic Cat therefore cannot receive any pre-complaint damages. Bombardier argued that noncompliance with § 287 can be cured only by either beginning to mark or providing actual notice to an alleged infringer.

The district court granted summary judgment in favor of Bombardier, and Arctic Cat appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

We review a district court's grant of summary judgment according to the law of the regional circuit. *Kaneka Corp. v. Xiamen Kingdomway Grp. Co.*, 790 F.3d 1298, 1303 (Fed. Cir. 2015) (citing *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 769 F.3d 1371, 1377 (Fed. Cir. 2014)). The Eleventh Circuit reviews grants of summary judgment *de novo*. *Myers v. Bowman*, 713 F.3d 1319, 1326 (11th Cir. 2013). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.

In this appeal, we are tasked with interpreting the marking statute, 35 U.S.C. § 287. Statutory interpretation is a question of law that we review *de novo*. *Wyeth v. Kappos*, 591 F.3d 1364, 1369 (Fed. Cir. 2010) (quoting *Glaxo Operations UK Ltd. v. Quigg*, 894 F.2d 392, 395 (Fed. Cir. 1990)).

I

Section 287(a) provides in pertinent part:

Patentees, and persons making, offering for sale, or selling within the United States any patented article for or under them, or importing any patented article into the United States, may give notice to the public that the same is patented . . . by fixing thereon the word "patent" . . . . In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice.

The notice provisions of § 287 do not apply to patents directed to processes or methods. *See Wine Ry. Appliance*

*Co. v. Enterprise Ry. Equip. Co.*, 297 U.S. 387, 395 (1936). Nor do they apply when a patentee never makes or sells a patented article. *Id.* at 398. Thus, a patentee who never makes or sells a patented article may recover damages even absent notice to an alleged infringer. If, however, a patentee makes or sells a patented article and fails to mark in accordance with § 287, the patentee cannot collect damages until it either begins providing notice or sues the alleged infringer—the ultimate form of notice—and then only for the period after notification or suit has occurred. Thus, a patentee who begins selling unmarked products can cure noncompliance with the notice requirement—and thus begin recovering damages—by beginning to mark its products in accordance with the statute. *See Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1537 (Fed. Cir. 1993).

A patentee's licensees must also comply with § 287. *See Arctic Cat I*, 876 F.3d at 1366 (citing *Maxwell v. J. Baker, Inc.*, 86 F.3d 198, 1111 (Fed. Cir. 1996)). While courts may consider whether the patentee made reasonable efforts to ensure third parties' compliance with the marking statute, *id.*, here Arctic Cat's license agreement with Honda expressly states that Honda had no obligation to mark. J.A. 4081 ¶ 6.01; J.A. 259 ¶ JJ. Thus, it is does not excuse Arctic Cat's lack of marking that it is Arctic Cat's licensee, rather than Arctic Cat itself, who sold unmarked products.

A patentee who makes or sells patented articles can satisfy the notice requirement of § 287 either by providing constructive notice—*i.e.*, marking its products—or by providing actual notice to an alleged infringer. *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1345 (Fed. Cir. 2001). "Actual notice requires the affirmative communication of a specific charge of infringement by a specific accused product or device." *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994).

This case presents a discontinuous situation in which unmarked products were sold, such that Arctic Cat could not receive damages before providing notice, but the sales of unmarked products allegedly stopped for a period of time prior to the filing of Arctic Cat's complaint.  Thus, the issue presented is whether the cessation of sales of unmarked products excuses noncompliance with the notice requirement of § 287 such that a patentee may recover damages for the period after sales of unmarked products ceased but before the filing of a suit for infringement.  We hold that it does not.

Arctic Cat argues that, because § 287 is written in the present tense, the statute by its terms only applies while a patentee is "making, offering for sale, or selling" its products.  Thus, according to Arctic Cat, the statute limits damages only during periods when the patentee is actually making, offering for sale, or selling the patented article.  Bombardier responds that, to begin recovering damages after sales of unmarked products have begun, § 287 requires that a patentee either begin marking its products or provide actual notice to an alleged infringer; cessation of sales of unmarked products is not enough.  We agree with Bombardier.

We begin with the language of the statute.  *Duncan v. Walker*, 533 U.S. 167, 172 (2001).  While § 287 describes the conduct of the patentee in the present tense, the consequence of a failure to mark is not so temporally limited.  Section 287 provides that "in the event of failure so to mark, *no* damages shall be recovered by the patentee in *any* action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter" (emphasis added).  The statute thus prohibits a patentee from receiving *any* damages in a subsequent action for infringement after a failure to mark, rather than merely a reduced amount of damages in proportion to the amount of time the patentee was actually practicing the asserted patent.

Arctic Cat's obligation to mark arose when its licensee began selling patented articles. The cessation of sales of unmarked products certainly did not fulfill Arctic Cat's notice obligations under § 287, nor did it remove the notice requirement imposed by the statute. The notice requirement to which a patentee is subjected cannot be switched on and off as the patentee or licensee starts and stops making or selling its product. After all, even after a patentee ceases sales of unmarked products, nothing precludes the patentee from resuming sales or authorizing a licensee to do so. In the meantime, unmarked products remain on the market, incorrectly indicating to the public that there is no patent, while no corrective action has been taken by the patentee. Confusion and uncertainty may result. Thus, once a patentee begins making or selling a patented article, the notice requirement attaches, and the obligation imposed by § 287 is discharged only by providing actual or constructive notice.

This reading of § 287 comports with the purpose of the marking statute. The policy of § 287 is to encourage marking, not merely to discourage the sale of unmarked products. We have explained that the notification requirement of § 287 "serves three related purposes: (1) helping to avoid innocent infringement; (2) encouraging patentees to give public notice that the article is patented; and (3) aiding the public to identify whether an article is patented." *Arctic Cat I*, 876 F.3d at 1366 (citing *Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1443 (Fed. Cir. 1998)). Requiring a patentee who has sold unmarked products to provide notice in order to begin recovering damages advances these objectives by informing the public and possible infringers that the article is patented. Arctic Cat's proposed interpretation, on the other hand, would undermine these objectives. In Arctic Cat's view, § 287 should be read to allow a patentee to mislead others that they are free to make and sell an article that is actually patented, but nonetheless

allow the patentee to recover damages without undertaking any corrective action. We reject this view.

In *American Medical Systems*, 6 F.3d at 1537, we interpreted § 287 to allow a patentee who had sold unmarked products to begin recovering damages after the patentee began marking. Otherwise, a patentee who has sold unmarked products would have no incentive to begin marking, contrary to the objective of the statute. Here, where Honda merely stopped selling unmarked products but Arctic Cat otherwise took no action to remedy prior noncompliance or to provide notice that the articles were actually patented, Arctic Cat never complied with the notice requirement of § 287 and thus cannot recover damages for any period prior to the filing of its complaint.

## II

Arctic Cat also argues that, regardless of its failure to mark, it should nevertheless recover the maximum amount of pre-suit damages allowed by 35 U.S.C. § 286 because the jury's finding that Bombardier willfully infringed the asserted claims should be sufficient to establish actual notice under § 287. Arctic Cat acknowledges, as it must, that this argument is foreclosed by our precedent. In *Amsted Indus. Inc. v. Buckeye Steel Castings Co.* we held that the determination whether a patentee provided actual notice under § 287 "must focus on the action of the patentee, not the knowledge or understanding of the infringer," and that "[i]t is irrelevant . . . whether the defendant knew of the patent or knew of his own infringement." 24 F.3d 178, 187 (Fed. Cir. 1994) (citing *Am. Med. Sys., Inc.*, 6 F.3d at 1537 n.18)). Accordingly, we reject Arctic Cat's argument.

Aside from our inability to reverse the decision of an earlier panel, *see Newell Cos., Inc. v. Kenney Mfg. Co.*, 864 F.2d 757, 765 (Fed. Cir. 1988), we reiterate the conclusion that willfulness, as an indication that an infringer knew of a patent and of its infringement, does not serve as actual notice as contemplated by § 287. While willfulness turns

on the knowledge of an infringer, § 287 is directed to the conduct of the patentee. The marking statute imposes notice obligations on the patentee, and only the patentee is capable of discharging those obligations. It is not directed to the infringer and does not contemplate mere knowledge of the infringer as sufficient to discharge the notice requirements placed on the patentee.

Arctic Cat bases its argument for reversing *Amsted* on a supposed typographical error in that opinion in a quotation from the Supreme Court's decision in *Dunlap v. Schofield*, 152 U.S. 244 (1894). Where the Supreme Court stated that notice "is an affirmative *fact*," *id*. at 248, our opinion in *Amsted* quoted *Dunlap* as characterizing notice as "an affirmative *act*," 24 F.3d at 187. Arctic Cat argues that this discrepancy undermines the reasoning in *Amsted* and that, properly understood, *Dunlap* stands for the proposition that notice is a fact that can be proved by knowledge of the infringer. But the alleged mistranscription in *Amsted* is inconsequential to our analysis of *Dunlap* because the relevant *fact* is the *act* of the patentee. The full context of *Dunlap* confirms this understanding:

> The clear meaning of this section is that the patentee or his assignee, if he makes or sells the article patented, cannot recover damages against infringers of the patent, unless he has given notice of his right, either to the whole public, by marking his article 'Patented,' or to the particular defendants, by informing them of his patent, and of their infringement of it.
>
> One of these things—marking the articles, or notice to the infringers—is made by the statute a prerequisite to the patentee's right to recover damages against them. Each is an affirmative fact, and is something to be done by him.

152 U.S. at 248. Thus, the fact is the act of marking or providing notice, and both are "something to be done by"

the patentee. Knowledge by the infringer is not enough. Actual notice under § 287 requires performance by the patentee.

Finally, we note that other decisions of this court predating *Amsted* similarly interpreted actual notice under § 287 to require action by the patentee. *See Am. Med. Sys.*, 6 F.3d at 1537 n.18 (Fed. Cir. 1993) ("The notice of infringement must therefore come from the patentee, not the infringer."); *Devices for Med., Inc. v. Boehl*, 822 F.2d 1062, 1066 (Fed. Cir. 1987) ("[The patentee] failed to carry its burden of convincing the jury that it had performed affirmative acts in compliance with § 287.").

## CONCLUSION

We have considered Arctic Cat's remaining arguments but find them unpersuasive. Accordingly, for the reasons above, we affirm the district court's denial of pre-complaint damages to Arctic Cat.

**AFFIRMED**